## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GOOD TECHNOLOGY CORPORATION )
and GOOD TECHNOLOGY )
SOFTWARE, INC., )
            )
           Plaintiffs, )
            )
      v. )      Civil Action No. 14-1092-LPS-CJB
            )
AIRWATCH, LLC, )
            )
           Defendant. )

## REPORT AND RECOMMENDATION

Plaintiffs Good Technology Corporation and Good Technology Software, Inc.

(collectively "Plaintiffs" or "Good") filed the instant patent infringement suit against Defendant

Airwatch, LLC ("Defendant" or "AirWatch"). Presently pending before the Court is Defendant's

motion to transfer venue (the "Motion") to the United States District Court for the Northern

District of Georgia ("Northern District of Georgia"). (D.I. 16) For the reasons that follow, the

Court recommends that Defendant's Motion be GRANTED.[1]

## I.    BACKGROUND

### A.    Procedural History

The instant case was filed on August 22, 2014. (D.I. 1) In light of a later-filed Amended

Complaint, Good now asserts that AirWatch is directly, indirectly and willfully infringing United

---

[1] There is a split of authority in the courts as to whether a motion to transfer venue should be treated as a dispositive or non-dispositive motion. *See Pragmatus AV, LLC v. Yahoo! Inc.*, C.A. No. 11-902-LPS-CJB, 2013 WL 174499, at *1 & n.1 (D. Del. Jan. 16, 2013). The most recent precedent in our Court indicates that such a motion is non-dispositive. *See Agincourt Gaming LLC v. Zynga Inc.*, Civil Action No. 11-720-RGA, 2013 WL 3936508, at *2 (D. Del. July 29, 2013). Nevertheless, in an abundance of caution, the Court will title this document as a "Report and Recommendation."

States Patent Nos. 8,117,344 (the "'344 patent"), 8,812,702 (the "'702 patent") and 6,023,708

("the "'708 patent"). (D.I. 12) The '344 patent and the '702 patent relate to systems and methods

for providing global and secure access to services and to unified (or synchronized) workspace

elements in a computer network. (*Id.*, ex. A, C) The '708 patent is directed to a system and

method for using a global translator to synchronize multiple copies of a workspace element in a

secure network environment, where that environment includes a global server connected to

multiple clients. (*Id.*, ex. B) The Amended Complaint accuses of infringement certain AirWatch

products that provide hardware and software solutions for providing and securing remote access

to corporate resources and services (the "accused products"). (D.I. 12 at ¶ 14 & n.1)

On September 2, 2014, Chief Judge Leonard P. Stark referred the instant case to this

Court to resolve any and all matters with regard to scheduling, as well as any motions to dismiss,

stay and/or transfer venue. (D.I. 7) On October 3, 2014, AirWatch answered the Amended

Complaint, (D.I. 13), and on October 31, 2014, it filed the instant Motion, (D.I. 16). The Court

subsequently held a Case Management Conference on December 8, 2014, and entered a

Scheduling Order thereafter. (D.I. 31) Trial in the case is scheduled for December 12, 2016.

(*Id.*)

## B.  Other Actions Involving the Parties

There are a number of related legal actions that impact the instant Motion.

In addition to this case, Good and AirWatch are currently litigating a number of other

matters against each other around the world.[2]  A number of these cases are in the Northern

---

[2]      In addition to the matters referenced in this paragraph, the parties are also
litigating: (1) a patent infringement suit brought by Plaintiffs against AirWatch in November
2012 in the United States District Court for the Northen District of California (involving four

2

District of Georgia. On July 18, 2014, AirWatch filed a complaint against Plaintiffs in the Northern District of Georgia, asserting infringement of United States Patent No. 8,713,646 (the "'646 patent"). On October 14, 2014, AirWatch also filed a complaint against Plaintiffs alleging infringement of United States Patent No. 8,826,432 (the "'432 patent"). And in between the filing of those two suits, AirWatch filed a complaint against Plaintiffs on August 2, 2013, in the Superior Court of Fulton County, Georgia, asserting Georgia state law claims of defamation and deceptive trade practices. (D.I. 17 at 5; D.I. 19, exs. E-F; D.I. 23 at 2-3)

For its part, after it filed this case, Good brought another suit in this Court asserting infringement of the '344 patent. That case, brought against Defendant MobileIron, Inc., was filed on October 14, 2014. (*Good Technology Corp. v. MobileIron Inc.*, Civil Action No. 14-1308-LPS-CJB (D. Del.) ("*MobileIron*"), (D.I. 1)) That matter has also been assigned to Chief Judge Stark and it has been referred to this Court for the same purposes as was the instant matter. (*MobileIron*, D.I. 6)

## C. The Parties and Related Facts, Persons and Entities

Both Plaintiffs are Delaware corporations that have their principal place of business in Sunnyvale, California. (D.I. 12 at ¶ 8)

AirWatch is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. (*Id.* at ¶ 9) The company, which describes itself as a leading provider of enterprise mobile management and security solutions, has more than 10,000 customers globally and more than 1,600 employees across nine global offices. (D.I. 24, ex. A) Approximately 1,180

---

patents not asserted here); and (2) two patent infringement suits in the United Kingdom. (D.I. 17 at 5 & n.1; D.I. 23 at 2)

of these employees are located in AirWatch's Atlanta offices (which are, in turn, located in the Northern District of Georgia); AirWatch's management and its primary research and development facilities are also located in those same offices. (D.I. 18 at ¶ 3) AirWatch's other United States-based offices are found in Akron, Ohio; Miami, Florida and Washington, D.C.; it has no personnel or offices in Delaware. (*Id.* at ¶¶ 5, 7) AirWatch was acquired in January 2014 by VMware, Inc. for $1.175 billion in cash and $365 million of installment payments and assumed unvested equity. (D.I. 24, ex. A)

Virtually all of AirWatch's research, design, development and marketing of the accused AirWatch products took place in Atlanta, and that is the place where witnesses with knowledge of those issues work today. (D.I. 18 at ¶ 4) Nearly all of AirWatch's electronic and paper records regarding those subjects are located in Atlanta. (*Id.*) AirWatch has, however, sold the accused products nationally, including in the District of Delaware and the Northern District of Georgia, as the accused products are downloaded by customers via the Internet. (D.I. 12 at ¶¶ 14-15; D.I. 18 at ¶ 6)

There are a total of 11 inventors of the three patents-in-suit. According to their residences as listed on the patents, 10 of the 11 inventors live in California, while one lives in the State of Washington. (D.I. 12, exs. A-C) The attorneys responsible for prosecuting the patents-in-suit have offices located in California and Virginia. (D.I. 17 at 4; D.I. 19, exs. B-D)

## II.    DISCUSSION

### A.    Legal Standard

Section 1404(a) of Title 28 provides the statutory basis for a transfer inquiry.[3] It provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30-31 (1988)).

The United States Court of Appeals for the Third Circuit has emphasized that when considering a motion to transfer venue pursuant to Section 1404(a), "courts normally defer to a plaintiff's choice of forum" and thus "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879-80 (internal quotation marks and citations omitted). This general principle, drawn from the historic respect accorded a plaintiff's choice of venue, suggests that "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (internal quotation marks and citation omitted).

The party seeking a transfer has the burden "to establish that a balancing of proper interests weigh[s] in favor of the transfer[.]" *Id.*; *see also Jumara*, 55 F.3d at 879. That burden is a heavy one: "unless the balance of convenience of the parties is *strongly in favor of defendant*, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25 (internal

---

[3]     In analyzing a motion to transfer in a patent case, it is the law of the regional circuit that applies. *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 487 n.7 (D. Del. 2011) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1331 (Fed. Cir. 2011)).

quotation marks and citation omitted) (emphasis added); *see also CNH Am. LLC v. Kinzenbaw*,

C.A. No. 08-945(GMS), 2009 WL 3737653, at *2 (D. Del. Nov. 9, 2009). Accordingly, "transfer

will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer."

*Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF, 2010 WL 3037478, at *2

(D. Del. July 30, 2010); *see also Illumina, Inc. v. Complete Genomics, Inc.*, Civil Action No. 10-

649, 2010 WL 4818083, at *2 (D. Del. Nov. 9, 2010).

The Third Circuit has observed that, in undertaking this transfer analysis, "there is no

definitive formula or list of the factors to consider[.]" *Jumara*, 55 F.3d at 879. Instead, courts

must analyze "all relevant factors" to determine whether "the litigation would more conveniently

proceed and the interests of justice be better served by transfer to a different forum." *Id.* (internal

quotation marks and citation omitted). Nevertheless, in *Jumara v. State Farm Ins. Co.*, 55 F.3d

873 (3d Cir. 1995), the Third Circuit identified a set of private interest and public interest factors

that should be taken into account in this analysis (the "*Jumara* factors"). The private interest

factors to consider include:

> [1] [The] plaintiff's forum preference as manifested in the original
> choice, [2] the defendant's preference, [3] whether the claim arose
> elsewhere, [4] the convenience of the parties as indicated by their
> relative physical and financial condition, [5] the convenience of the
> witnesses—but only to the extent that the witnesses may actually be
> unavailable for trial in one of the fora . . . and [6] the location of
> books and records (similarly limited to the extent that the files could
> not be produced in the alternative forum).

*Id.* at 879. The public interest factors to consider include:

> [1] [T]he enforceability of the judgment, [2] practical considerations
> that could make the trial easy, expeditious, or inexpensive, [3] the
> relative administrative difficulty in the two fora resulting from court
> congestion, [4] the local interest in deciding local controversies at

6

home, [5] the public policies of the fora, ... and [6] the familiarity
of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted). District courts should explicitly consider each of these factors, at least to the extent that the parties make "arguments" about them. *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011) (citing *Jumara*, 55 F.3d at 879) (noting that it would be "improper to ignore" any of the factors in such a circumstance).

### 1. Appropriateness of Transferee Venue

The first step in the transfer analysis is to determine whether this action could have been brought in the proposed transferee venue. "The party moving for transfer bears the burden of proving that the action properly could have been brought in the transferee district in the first instance." *Mallinckrodt Inc. v. E–Z–Em Inc.*, 670 F. Supp. 2d 349, 356 (D. Del. 2009) (internal quotation marks and citation omitted). Here, there is no dispute that this infringement action could have been properly brought in the Northern District of Georgia, where AirWatch has its principal place of business. (D.I. 17 at 7; D.I. 23; D.I. 27 at 2); *see also* 28 U.S.C. § 1400(b).

### 2. Application of the *Jumara* Factors

#### a. Private Interest Factors

##### i. Plaintiff's choice of forum

When analyzing the first *Jumara* private interest factor—the "plaintiff's forum preference as manifested in the original choice"—the court should not consider simply the fact of that choice, but the reasons behind the choice. *Pragmatus AV, LLC v. Yahoo! Inc.*, Civil Action No. 11-902-LPS-CJB, 2012 WL 4889438, at *4 & n.5 (D. Del. Oct. 15, 2012) ("*Pragmatus I*") (citing cases), *report and recommendation adopted*, 2013 WL 174499 (D. Del. Jan. 16, 2013)

("*Pragmatus II*"); *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 200 (D. Del. 1998). "If those reasons are rational and legitimate, then they will weigh against transfer, as they are likely to support a determination that the instant case is properly venued in this jurisdiction." *Pragmatus I*, 2012 WL 4889438, at *4 (internal quotation marks and citations omitted) (citing cases); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 753 (D. Del. 2012) ("*Altera*"). On the other hand, where a plaintiff's choice of forum was made for an improper reason—such as where the choice is arbitrary, irrational, or selected to impede the efficient and convenient progress of a case—it should not be afforded substantial weight. *Pragmatus I*, 2012 WL 4889438, at *4; *Affymetrix*, 28 F. Supp. 2d at 200 (noting that if a plaintiff had no good reason, or an improper reason, for filing suit in this District, this would likely weigh in favor of transfer).

Plaintiffs cite a number of reasons as to why they chose to file suit in this District. Among those are that they filed suit in a District in which they are incorporated, and thus where they have previously availed themselves of the benefits of the State's laws and its court systems. (D.I. 23 at 4-5) This reason has often been found to be both rational and legitimate in the transfer inquiry context. *See, e.g., Altera*, 842 F. Supp. 2d at 754; *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 479 (D. Del. 2011) ("*Checkpoint Software*").

AirWatch, for its part, does not dispute that this factor should weigh against transfer. It argues only that Good's choice of forum "should not be dispositive" and is "only one of the factors in the [overall *Jumara*] analysis." (D.I. 17 at 8) The Court agrees and will, as *Jumara* counsels, treat this factor simply as one of many that it must consider. *Cf. In re Amendt*, 169 F.

8

App'x 93, 96-97 (3d Cir. 2006); *McRo, Inc. v. Activision Blizzard, Inc.*, Civil Action Nos. 12-1508-LPS-CJB, 12-1511-LPS-CJB, 12-1512-LPS-CJB, 12-1518-LPS-CJB, 2013 WL 6571618, at *3 & n.8 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2013 WL 6869866 (D. Del. Dec. 30, 2013).

Therefore, because there is a clear, legitimate reason why Plaintiffs chose this forum for suit, this factor weighs against transfer.

### ii.    Defendant's forum preference

As for the second private interest factor—the defendant's forum preference—AirWatch prefers to litigate in the Northern District of Georgia. (D.I. 17 at 1, 11) In analyzing this factor, our Court has similarly "tended to examine whether the defendant can articulate rational, legitimate reasons to support that preference." *Pragmatus I*, 2012 WL 4889438, at *6 (citation omitted).

Defendant argues throughout its briefing that it has a number of legitimate reasons for seeking to transfer this action to the Northern District of Georgia. These include the fact that its headquarters are located there, as are many likely party witnesses and relevant documents. (D.I. 17 at 1, 11, 13) This Court has often held that the physical proximity of a defendant's place of business (and relatedly, of witnesses and evidence potentially at issue in the case) to the proposed transferee district is a clear, legitimate basis for seeking transfer to that district. *See, e.g., Nalco Co. v. AP Tech Grp. Inc.*, C.A. No. 13-1063-LPS, 2014 WL 3909114, at *1 (D. Del. Aug. 8, 2014) (finding the fact that a defendant's principal place of business was located in the proposed transferee forum to "weigh[] in favor of transfer"); *Genetic Techs. Ltd. v. Natera, Inc.*, C.A. No. 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014) (finding that defendant's choice

9

of forum "weighs in favor of transfer" because defendant's principal place of business was in the proposed transferee district and was where the majority of its 289 employees work); *Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, C.A. No. 12-cv-1479 (GMS), 2013 WL 4496644, at *4 (D. Del. Aug. 21, 2013); *McRo, Inc.*, 2013 WL 6571618, at *4 (citing cases).

Thus, the second private interest *Jumara* factor weighs in favor of transfer.

### iii.    Whether the claim arose elsewhere

The third private interest *Jumara* factor asks "whether the claim arose elsewhere." As a matter of law, a claim regarding patent infringement arises "wherever someone has committed acts of infringement, to wit, 'makes, uses, offers to sell, or sells any patented invention' without authority." *McRo, Inc.*, 2013 WL 6571618, at *5 (internal quotation marks and citations omitted). Nevertheless, as to this factor, this Court typically focuses on the location of the production, design and manufacture of the accused instrumentalities. *Id.* (citing cases); *Altera*, 842 F. Supp. 2d at 755 ("'[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.'") (quoting *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009)).

AirWatch asserts that this factor favors transfer because it "conducts its research and development, marketing, and sales out of the Northern District of Georgia, [and thus] Good's claims arise from products developed, marketed, and sold there." (D.I. 17 at 10) Plaintiffs, for their part, question this assertion. They note that AirWatch is a global company and argue that AirWatch "has not established that such [research, development, marketing and sales] activities occur *only* in Atlanta and not in any other of AirWatch's global offices." (D.I. 23 at 9-10 (emphasis in original)) Plaintiffs then argue that because AirWatch targets customers nationwide

through its marketing efforts, and because the accused products are sold nationwide (including in Delaware), their "claims of infringement arose in Delaware to the same extent that they could be considered to arise in any other district." (*Id.* at 8-9)

The record before the Court indicates that although AirWatch is a global company, "*virtually all* of AirWatch's research, design, development, and marketing of the accused AirWatch products took place in Atlanta" and thus that the "foreseeable witnesses with knowledge of the design, development, operation, finances, sales, and marketing of these products reside and work in Atlanta, Georgia." (D.I. 18 at ¶ 4 (emphasis added)) And even acknowledging that the accused products are marketed and sold to a nationwide audience, the record indicates that this marketing and sales activity has emanated from the Northern District of Georgia. Thus, a significant portion of the acts giving rise to Plaintiffs' claims of infringement have a strong connection to the Northern District of Georgia (one far stronger than their connection to Delaware or any other district).

In such a circumstance, the Court finds that this factor weighs in favor of transfer. *See Nalco Co.*, 2014 WL 3909114, at *2 (finding that this factor "favor[ed] transfer" where the defendant "conduct[ed] all of its research and development, marketing, and sales out of" the proposed transferee forum such that plaintiff's claims arose "from products developed, marketed, and sold out of" that forum); *Altera*, 842 F. Supp. 2d at 755 (finding this factor weighed in favor of transfer where, *inter alia*, some research and development of allegedly infringing products had occurred in the proposed transferee district and none in Delaware, although the allegedly infringing products were sold nationwide); *cf. Checkpoint Software*, 797 F. Supp. 2d at 481 (finding that this factor "slightly" favored transfer, where "some amount" of the research and

development of some of the accused products and services was conducted in the transferee

district, but where the "bulk" of that activity occurred outside of the transferee district).

>                iv.    **Convenience of the parties as indicated by their relative**
>                       **physical and financial condition**

In assessing the next private interest factor—"the convenience of the parties as indicated

by their relative physical and financial condition"—this Court has traditionally examined issues

including: "(1) the parties' physical location; (2) the associated logistical and operational costs

to the parties' employees in traveling to Delaware (as opposed to the proposed transferee district)

for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its

size and financial wherewithal." *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. No. 12-cv-139

(GMS), 2013 WL 3293611, at *4 (D. Del. June 28, 2013) (citations omitted); *McKee v.

PetSmart, Inc.*, C.A. No. 12-1117-SLR-MPT, 2013 WL 1163770, at *4 (D. Del. Mar. 20, 2013)

(citations omitted).

Defendant argues that because its business is headquartered in the Northern District of

Georgia, and because many of its witnesses are located there, requiring its witnesses to "travel to

Delaware for this litigation would disrupt their work schedule, resulting in significant costs to

AirWatch not only in the form of trial-related travel expenses, but also due to decreases in

productivity." (D.I. 17 at 11)[4] Conversely, it asserts that litigating the case in the Northern

District of Georgia will allow it to be "spared the expenses and burdens associated with out-of-

---

[4]      Plaintiffs assert that one possible witness, the co-founder and Senior Vice
President of AirWatch, resides in Virginia (i.e., closer to Delaware than to Georgia). (D.I. 23 at
10 n.3 (citing D.I. 24, ex. F)) Even assuming this executive is likely to be a trial witness (and
that is not clear at all from the record), the Court could not conclude anything other than the great
majority of AirWatch's likely trial witnesses are to be found in the Northern District of Georgia.

state travel and additional interruption of its business operations." (*Id.*) Indeed, it is clear that from a geographical perspective, litigating in the Northern District of Georgia (as opposed to Delaware) would be much more convenient for Defendant and its employees.

Yet Defendant is, by all accounts, a large, global corporation. It was recently acquired by another company for well over $1 billion in cash and other compensation, and it employs approximately 1,600 persons over nine global offices. (D.I. 24, ex. A) It concedes that in light of its size, it has the ability to easily bear any increased costs associated with litigating in Delaware (as opposed to the proposed transferee forum). (D.I. 17 at 12) And it is certainly no stranger to Delaware, having decided to incorporate in the State for business purposes. *See Altera*, 842 F. Supp. 2d at 756 (noting that due to defendants' status as Delaware corporations, it was an "uphill climb" for them to argue that litigating in Delaware was decidedly inconvenient) (citing *Micron Tech.*, 645 F.3d at 1332). The Court is thus unpersuaded that—for the small number of AirWatch's employees who would likely be required to travel to Delaware during this case—such travel would amount to a "significant" disruption (financial or otherwise) to AirWatch. *See, e.g., id.* at 755 (noting that there was nothing in the record to indicate that litigating in Delaware would impose an "undue financial burden" on defendants, where defendants had extensive United States and worldwide operations, employed hundreds or thousands of workers and each had annual sales of at least $250 million and as much as over $1 billion); *Checkpoint Software*, 797 F. Supp. 2d at 481 (finding that it was "implausible" that litigating one patent infringement action in Delaware would "'significantly disrupt'" defendants' businesses, where each defendant was a "global corporation, employing at least 1,000 people,

13

and earning revenues in excess of $1 billion").[5]

Plaintiffs' principal place of business is located in California, and they do not claim that litigating in Delaware is any more convenient to them from a physical or financial perspective than litigating in the Northern District of Georgia. Very little is in the record regarding Plaintiffs' size; what there is suggests that Plaintiffs are part of a large enterprise with many offices around the world. (D.I. 19, ex. A)

In sum, here the Court will take into account the fact that AirWatch's trial witnesses are likely to be in close proximity to the proposed transferee forum, but will discount the impact of this fact for the other reasons mentioned above. As a result (and with Plaintiffs' witnesses not noticeably close to either venue), the Court finds that this factor should weigh in favor of transfer, but only slightly.

### v. Convenience of the witnesses to the extent that they may actually be unavailable for trial in one of the fora

The "convenience of the witnesses" is the next factor, "but only to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879. "[I]n reviewing a motion to transfer, courts frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial." *ADE Corp. v. KLA-Tencor Corp.*, 138 F.

---

[5]     Moreover, while there would be some additional inconvenience to Defendant's employee witnesses, were they obligated to travel to Delaware for pre-trial or trial proceedings, the amount of such travel is not likely to be large—particularly if this case does not result in a trial. *See, e.g., Human Genome Scis., Inc. v. Genentech, Inc.*, C.A. Nos. 11-082-LPS, 11-156-LPS, 11-328-LPS, 2011 WL 2911797, at *7 (D. Del. July 18, 2011) (noting that the likelihood that few case events would occur in Delaware—particularly few if the case did not go to trial—weighed against transfer, as did technological advances that allow traveling employees to more easily interact with their office while away).

Supp. 2d 565, 569 (D. Del. 2001). In explaining how the concerns implicated by this factor

relate to the different types of witnesses who might testify at trial, this Court has noted:

> Party witnesses or witnesses who are employed by a party carry no
> weight in the "balance of convenience" analysis since each party is
> able, indeed, obligated to procure the attendance of its own
> employees for trial. . . . Expert witnesses or witnesses who are
> retained by a party to testify carry little weight in determining where
> the "balance of convenience" lies (especially in an action for patent
> infringement) because they "are usually selected [on the basis] of
> their reputation and special knowledge without regard to their
> residences and are presumably well compensated for their
> attendance, labor and inconvenience, if any." . . . Fact witnesses
> who possess first-hand knowledge of the events giving rise to the
> lawsuit, however, have traditionally weighed quite heavily in the
> "balance of convenience" analysis.

*Affymetrix,* 28 F. Supp. 2d at 203 (citations omitted). Of particular concern, then, are fact

witnesses who may not appear of their own volition in the venue-at-issue and who could not be

compelled to appear by subpoena pursuant to Federal Rule of Civil Procedure 45. *ADE Corp.,*

138 F. Supp. 2d at 569.

As an initial matter, our Court has noted that the practical impact of this factor is limited,

in light of the fact that so few civil cases today proceed to trial (and at trial, so few fact witnesses

testify live). *Cellectis S.A. v. Precision Biosciences, Inc.,* 858 F. Supp. 2d 376, 382 n.6 (D. Del.

2012); *Altera,* 842 F. Supp. 2d at 757-58. A party's ability to put forward testimony of witnesses

of its choosing at trial is, of course, important; these cases simply recognize that the impact of

this factor has to be tempered a bit by the unlikely event of a trial's occurrence.

AirWatch acknowledges that the "readily identifiable 'key' non-party fact witnesses" are

the named inventors of the patents-in-suit and (perhaps) the attorneys responsible for prosecuting

the patents—all or nearly all of whom live on the West Coast, not particularly close to either

15

district. (D.I. 17 at 13) It nevertheless suggests that because some of its current employee fact witnesses (who live in the Northern District of Georgia) might retire or resign prior to trial, this should tip this factor in its favor. (*Id.* (citing *Signal Tech, LLC v. Analog Devices, Inc.*, Civil Action No. 11-1073-RGA, 2012 WL 1134723, at *3 (D. Del. Apr. 3, 2012))) In the Court's view, however, that line of argument calls for far too much speculation. It first requires the Court to guess at how many current Defendant employee fact witnesses there might be. Then it requires the Court to guess at the odds that one or more of these unnamed persons might leave the company prior to trial, and then at the odds as to whether they would thereafter remain within the subpoena power of the Northern District of Georgia.

In sum, of the possibly relevant third party trial witnesses that have been identified with any specificity, all or nearly all of them live far away from the respective districts. The Court thus finds this factor to be neutral.

### vi.    Location of books and records

Next the Court considers "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal quotation marks and citation omitted).

This factor is commonly given little weight, however, as technological advances have "shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded . . . and have lowered the cost of moving that

16

information from one place to another." *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-199-SLR, 2001 WL 1617186, at *3 (D. Del. Nov. 28, 2001) (internal quotation marks and citation omitted); *see also Cellectis*, 858 F. Supp. 2d at 382; *ADE Corp.*, 138 F. Supp. 2d at 571 ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles."). Yet while the practical reality of these advances in technology may alter the weight given to this factor, a court should not "ignore" the factor entirely. *Link_A_Media*, 662 F.3d at 1224.

Here, the record evidence is that "[v]irtually all of the electronic and paper records of [the work of those AirWatch employees who researched, designed, developed and marketed the accused products], including technical documents, manuals, and records" are located in the Northern District of Georgia. (D.I. 18 at ¶ 4; *see also* D.I. 17 at 14; D.I. 23 at 14; D.I. 27 at 6) And yet it is also not disputed that, given technological advances in the production of documents, there is no real hurdle to producing those records in Delaware (as opposed to the Northern District) for trial. In such circumstances, our Court has often found this factor to weigh in favor of transfer, though only slightly. *See, e.g.*, *Joao Control*, 2013 WL 4496644, at *6; *Altera*, 842 F. Supp. 2d at 759; *Checkpoint Software*, 797 F. Supp. 2d at 485. The Court comes to the same conclusion here.

### b. Public Interest Factors

#### i. Enforceability of judgment

Neither party has offered any reason why a judgment entered in either district would not be given full faith and credit. (D.I. 17 at 15; D.I. 23 at 15) This factor is neutral. *See In re DVI*

*Inc.*, No. 03-12656 MFW, Civ.A. 04-170 JJF, 2004 WL 1498593, at *3 (D. Del. June 23, 2004)

(citing *Hechinger Inv. Co. of Del., Inc. v. M.G.H.*, 288 B.R. 398, 403 (Bankr. D. Del. 2003)).

### ii. Practical considerations that could make the trial easy, expeditious, or inexpensive

The Court next considers the "practical considerations that could make the trial easy,

expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. The most significant practical

consideration not directly addressed by other *Jumara* factors[6] is the existence of certain other

actions that have been brought by Plaintiffs or AirWatch.[7] *See Ross v. Institutional Longevity*

*Assets LLC*, Civil Action No. 12-102-LPS-CJB, 2013 WL 5299171, at *13 (D. Del. Sept. 20,

2013) ("In examining this *Jumara* factor, our Court has often cited the existence of related

lawsuits in one of the fora at issue as being an important 'practical consideration' to be taken into

account.") (citation omitted).

AirWatch points most prominently to two patent infringement suits it brought against

Plaintiffs in 2014 in the Northern District of Georgia. Yet AirWatch's efficiency-based

---

[6]     AirWatch asserts that another "[p]ractical consideration[]" that should be considered here is that it "would be less expensive and less disruptive of [its] business operations if this case is transferred[.]" (D.I. 17 at 15) However, because AirWatch raised these exact issues, in exactly the same way, as to the fourth private interest *Jumara* factor, (*id.* at 11-12), the Court will consider these issues in its analysis of that other factor only (and not "double-count" them here). *Cf. McRo, Inc.*, 2013 WL 6571618, at *12 n.15.

[7]     Both parties here ask the Court to take into account cases (one of the two Northern District of Georgia actions and the *MobileIron* action) filed after the instant case. The Federal Circuit has raised doubt as to whether a court may ever consider facts occurring "after the filing of a suit" when resolving a motion to transfer. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (emphasis omitted). But because the cases at issue here were filed shortly after the instant suit, the Court does not believe that considering them contravenes the spirit of the Federal Circuit's guidance. *See, e.g., McRo, Inc.*, 2013 WL 6571618, at *10 n.13 (distinguishing *In re EMC Corp.*).

arguments regarding these two cases seem a bit overstated. As Plaintiffs note, (D.I. 23 at 16-17), the two Northern District of Georgia cases involve patents that (as compared to the patents-in-suit) are owned by different parties, do not share the same inventors, are not part of the same patent family, do not share common specifications and touch on different specific subject matter. The accused products in the Northern District of Georgia actions are also different than those here (since AirWatch is the defendant here, while Plaintiffs are the defendants in the Northern District of Georgia cases). And although AirWatch asserts that the Northern District of Georgia patents and the patents-in-suit share "a common field of prior art[,]" (D.I. 17 at 15), it does not expand on that assertion. Nor does it address Plaintiffs' rejoinder that because the Northern District of Georgia patents have likely priority dates in 2011 and 2012, while the priority dates for the patents-in-suit appear to date to the early 1990s, then the cases "will not involve the same prior art." (D.I. 23 at 17)

To be fair, there are *some* similarities between the cases. All obviously involve the same parties. Although their particular subject matter differs, the Northern District of Georgia patents and the patents-in-suit could (as AirWatch asserts) generally be described as relating to "technologies for controlling remote access to corporate resources." (D.I. 17 at 16)[8] And as a result, it could be, as AirWatch claims, that certain damages arguments in the two sets of actions will involve overlapping facts (e.g., relating to appropriate royalty rates or to a lost profits

---

[8]     Relatedly, even Plaintiffs acknowledge that there is at least "minimal overlap" between the technology claimed in the '344 patent and that claimed in the '646 patent. (D.I. 23 at 16-17) The two patents also do appear to use some of the same claim terminology. (*See, e.g.*, '344 patent, col. 16:25-62; '646 patent, col. 11:15-56).

analysis). (*Id.*) But in the end, the differences between the cases outweigh their similarities.[9]

Plaintiffs point to the additional *MobileIron* case they filed in this District (approximately two months after the instant case) in which they also assert infringement of the '344 patent. (D.I. 23 at 17-18) The fact that the Court is overseeing another case involving the same patent (a case likely to involve a number of issues common to this one) should be accounted for. *See, e.g., In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (citing "the existence of multiple lawsuits involving the same issues" as a "paramount consideration when determining whether a transfer is in the interest of justice"); *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 732-33 (D. Del. 2012). Yet Plaintiffs' argument would be much stronger were there a larger number of related cases pending in this jurisdiction (as opposed to just one, the *MobileIron* case, which is still in its infancy, and in which the Defendant has filed a pending motion to transfer venue).[10] *See In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010).

In the Court's view, both sides can claim that judicial efficiency would favor their position. But the claims are not very strong on either side. Therefore, the Court finds this factor

---

[9] AirWatch also cites to the Georgia state court action pending between the parties in Fulton County, Georgia. (D.I. 17 at 16) It states that the case involves "[s]imilar" allegations to those made here: that is, as to Plaintiffs' accusations "regarding AirWatch's independent development, competitive conduct, and alleged copying[.]" (*Id.* (citing D.I. 12 at ¶¶ 6-7)) However, AirWatch provided no other information about the state court suit. It never explains how the existence of a state court suit involving these parties would promote economy with regard to a federal patent case between the same parties. And when Plaintiffs challenged the relevance of the state court suit in their answering brief, (D.I. 23 at 16 n.5), AirWatch did not attempt to further flesh out its argument in its reply brief, (D.I. 27). For all these reasons, the existence of the state court suit does not move the Court one way or the other.

[10] On January 9, 2015, Defendant MobileIron filed the motion to transfer venue, seeking to transfer that case to the Northern District of California. (*MobileIron*, D.I. 22)

to be neutral.

### iii. Administrative difficulties in getting the case to trial

The next factor is the "relative administrative difficulty in the two fora resulting from court congestion[.]" *Jumara*, 55 F.3d at 879. AirWatch asserts that this factor favors transfer. (D.I. 17 at 17-18) It cites statistics showing that during a 12-month period ending in March 2013, the median time to trial for civil cases in the Northern District of Georgia was 13.3 months less than that in this District. (*Id.* (citing D.I. 19, ex. H)) It also cites statistics noting that as of June 2014, this District had over 1,400 open patent cases, while the Northern District of Georgia had just under 60 open patent cases. (*Id.* (citing D.I. 19, exs. I-J)) Plaintiffs do not dispute these figures, nor cite to statistics of their own. (D.I. 23 at 18) Instead, they argue that this factor does not favor transfer because of this Court's familiarity with patent cases, which is likely to generate its own administrative efficiencies. (*Id.*)

Based on our Court's precedent, AirWatch's showing here means that this factor should redound in its favor. The statistics it cites indicate that the Northern District of Georgia is a much less congested court, and that, on average, this case could be expected to proceed to trial more quickly there than it would here. *See, e.g.*, *Cruise Control Techs. LLC v. Chrysler Grp. LLC*, Civil Action No. 12-1755-GMS, 2014 WL 1304820, at *5 (D. Del. Mar. 31, 2014) (finding that this factor favored transfer where the proposed transferee district's median time to trial in a civil case was 6.5 months less than in this District, and where the transferee district had 55 new patent cases filed in a one year time period, as opposed to 809 in this District, such that this District's dockets were "far more congested on average than those of courts in the [proposed transferee district]"); *McRo, Inc.*, 2013 WL 6571618, at *11-12 (finding that this factor favored

21

transfer where the median time to trial in the proposed transferee court was 15.3 months less than that in this District, and where the number of patent cases per District Judge in the transferee district was 8, while in this District it was 280).[11]

However, since the time period in which these statistics were generated, Chief Judge Stark has significantly altered his scheduling practices in patent cases. *See* Honorable Leonard P. Stark, Revised Procedures for Managing Patent Cases (June 18, 2014), *available at* http://www.ded.uscourts.gov/judge/chief-judge-leonard-p-stark (follow "New Patent Procedures" tab; then download "Patent Procedures" document). These changes impacted patent cases (such as this one) filed after July 1, 2014. (*Id.* at 1) Pursuant to these new procedures (and in contrast to Chief Judge Stark's prior practices), now Chief Judge Stark would "[w]ith rare exceptions, [] schedule trial upon entry of the scheduling order[.]" (*Id.* at 6) And whereas previously, Chief Judge Stark would not typically enter a Scheduling Order if a motion was filed in lieu of an Answer, under the current procedures the Court "will not [generally] defer the [Case Management Conference] and scheduling process solely due to the pendency of any [such] motion[].]" (*Id.*) Those changes will no doubt speed the average time to trial in patent cases like this one. Indeed, here, they resulted in a Scheduling Order being entered early in the case, with a trial date consistent with the joint request of Plaintiffs and AirWatch. (D.I. 31 at ¶ 25)

---

[11]     These collective disparities, and particularly the average time to trial, are far greater than they have been in cases where the factor has been deemed neutral. *See, e.g.*, *Pragmatus I*, 2012 WL 4889438, at *13 (concluding that the relative court congestion did not favor transfer in part due to the fact that the transferee district's average time to trial was only .85 months less than in this District, and the average time to disposition was 3.1 months less); *Checkpoint Software*, 797 F. Supp. 2d at 486 (concluding the same, where the difference in time to trial favored the transferee district by 3.7 months, an "'inconsequential'" amount) (internal citation omitted).

In the end, AirWatch's statistics regarding court congestion do suggest that the case might move faster to trial in the transferee Court. But in light of Chief Judge Stark's new procedures, and their impact on this case, the Court finds that this factor should only slightly favor transfer.

### iv. Local interests in deciding local controversies at home

In patent litigation, the local interest factor is typically neutral, as patent issues tend to raise controversies that are more properly viewed as national, not local, in scope. *Graphics Props. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013). Nevertheless, "[w]hile the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue . . . if there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *In re Hoffmann–La Roche*, 587 F.3d at 1338 (citations omitted); *see also Graphics Props.*, 964 F. Supp. 2d at 330-31.

Defendant suggests that the Northern District of Georgia has a local interest regarding these actions because it is the "center of operations for AirWatch and is where the majority of AirWatch's employees, the people most directly affected by the outcome of this litigation, are located." (D.I. 17 at 18) The Court recognizes the possibility that AirWatch's employees in Georgia may be affected by the outcome of this litigation. This consideration is tempered a bit, however, by the fact that there is little in the record to gauge how deep or meaningful that impact might be.

Plaintiffs, on the other hand, argue that Delaware has an interest in litigation regarding companies incorporated within its jurisdiction. (D.I. 23 at 19-20) Our Court has found this to be particularly so in a case like this one involving litigation "solely among Delaware corporations."

*Altera*, 842 F. Supp. 2d at 760.

With both sides able to claim a tangible local interest, the Court finds that this factor is neutral. *See, e.g.*, *Checkpoint Software*, 797 F. Supp. 2d at 486; *Altera*, 842 F. Supp. 2d at 760; *cf. In re Amendt*, 169 F. App'x at 97 (finding that the "interests of the two fora in deciding the controversy appear roughly equal because the [plaintiffs] live in [the district in which the case was filed], but [defendant] is headquartered in [the transferee district]").

v.     <b>Public policy of the fora</b>

The next factor relates to the public policy of the respective fora. This Court has previously held in the transfer context that the "'public policy of Delaware encourages the use by Delaware corporations of Delaware as a forum for resolution of business disputes.'" *Graphics Props.*, 964 F. Supp. 2d at 331 (internal quotation marks and citation omitted).

In the Court's view, the outcome as to this factor should, on the one hand, recognize the public policy interest noted above. That is, that Delaware promotes itself as a place that entities (such as all parties here, including those opposing transfer) should choose as their corporate home, and in doing so, touts itself as a forum well-positioned to help resolve business disputes. *See, e.g.*, *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d. 597, 604 & n.9 (D. Del. Jan. 9, 2012). On the other hand, Plaintiffs do not make a good case as to why the circumstances here indicate that this factor should resonate strongly in their favor. (*See* D.I. 23 at 20 (Plaintiffs arguing that this factor "weighs against transfer, or is, at best, neutral")).

All of this suggests that this factor disfavors transfer, but that it should be given "minimal weight." *Altera*, 842 F. Supp. 2d at 760.

vi.     <b>Familiarity of the trial judge with applicable state law in diversity cases</b>

24

This is not a diversity case. "[P]atent claims are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal quotation marks and citation omitted); *see also Altera*, 842 F. Supp. 2d at 760 (same). This factor is therefore neutral.

### c. Conclusion Regarding Impact of *Jumara* Factors

In sum, Plaintiffs' choice of forum weighs squarely against transfer, and the "public policy of the fora" factor weighs slightly against transfer. Defendant's forum preference and whether the claim arose elsewhere weigh squarely in favor of transfer. The "convenience of the parties" factor, the location of books and records, and the relative administrative difficulty in the two fora resulting from court congestion all weigh slightly in favor of transfer. The remainder of the *Jumara* factors are neutral.

In the end, the question is whether a balancing of the *Jumara* factors produces a result that is "strongly in favor of" transfer. *Shutte*, 431 F.2d at 25. While the issue is not free from doubt, here, the Court concludes that it does.

The Court comes to this conclusion not simply because a larger number of individual *Jumara* factors favor transfer. Nor is the conclusion drawn simply because there are many different ties between this litigation and the Northern District of Georgia—that the conduct at issue largely occurred there, that one of the parties is located there, that a good number of the trial witnesses would likely be found there, that a significant amount of the relevant records are located there, or that the District Court there is familiar with the parties and their disputes (at least as to this general subject matter). Nor is it premised solely on the fact that here, with regard to the

*Jumara* analysis, Plaintiffs are requiring the parties' Delaware corporate status to do nearly all of the work in their favor (i.e., the parties' corporate status is the only reason why any *Jumara* factors tilt at all in Plaintiffs' favor). Instead, it is the combination of all of these facts, taken together, which convinces the Court that AirWatch has exceeded the high bar set out in *Jumara*. *Cf. Joao Control*, 2013 WL 4496644, at *1-9 (granting a motion to transfer venue in a case where both parties were incorporated in Delaware, where defendant's principal place of business was in the transferee district, and where only plaintiff's forum preference weighed against transfer, while several *Jumara* factors counseled in favor of transfer).

## III. CONCLUSION

For the foregoing reasons, the Court recommends that the Motion be GRANTED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: January 21, 2015

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

26